ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| EL PUEBLO DE PUERTO RICO<br><br>Recurrida<br><br>v.<br><br>JAVIER CRUZ ROSARIO<br><br>Peticionario | KLCE202301321 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Mayagüez<br><br>Caso Núm.<br><br>ISCI202300289<br>ISCI202300163<br><br>Por:<br><br>Habeas Corpus Regla 240 |
|---|---|---|

Panel integrado por su presidente, la Jueza Ortiz Flores, el Juez Rivera Torres y la Jueza Rivera Pérez.

Rivera Pérez, Jueza ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 15 de diciembre de 2023.

Comparece ante nos el Sr. Javier Cruz Rosario (en adelante, Sr. Cruz Rosario) mediante *Petición de Certiorari* y nos solicita la revisión de la *Resolución y Orden* emitida el 25 de octubre de 2023 y notificada el 26 de octubre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (en adelante, TPI) en el Caso Núm. **ISCI202300163** sobre Regla 240 de Procedimiento Criminal, 34 LPRA Ap. II, R. 240.[1] Mediante este dictamen, el TPI declaró No Procesable al Sr. Cruz Rosario y ordenó su ingreso inmediato al Hospital Psiquiátrico Forense de Ponce.

Además, el Sr. Cruz Rosario nos solicita en el mismo recurso la revisión de la *Resolución* emitida el 6 de noviembre de 2023 y notificada el 7 de noviembre de 2023 por el TPI en el Caso Núm. **ISCI202300289** sobre *Habeas Corpus.* Mediante este dictamen, el TPI desestimó la *Petición de Habeas Corpus* presentada el 3 de

---

[1] Apéndice *Petición de Certiorari,* Anejo XXII, págs. 43-44.

Número Identificador

RES2023 _____

noviembre de 2023 por el Sr. Cruz Rosario por entender que este no era el recurso apropiado.

Por los fundamentos que expondremos, se deniega la expedición del recurso de *Petición de Certiorari*.

**I**

El 27 de marzo de 2023, el Ministerio Público presentó una *Denuncia* en contra del Sr. Cruz Rosario por violación al Artículo 3.1 de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, conocida como *"Ley para la Prevención e Intervención con la Violencia Doméstica"*, 8 LPRA sec. 631, por hechos alegadamente ocurridos el 26 de marzo de 2023 en el municipio de San Germán.[2] En la denuncia se alegó que el Sr. Cruz Rosario había agredido con su mano el rostro de la Sra. Wandaliz Ramos González (en adelante, Sra. Ramos González), con quien sostenía una relación consensual, ocasionándole una marca.

El 27 de marzo de 2023, el TPI halló causa probable para el arresto del Sr. Cruz Rosario por el delito imputado en la denuncia.[3] A raíz de ello, se fijó una fianza de $5,000.00, la cual el Sr. Cruz Rosario prestó quedando bajo la custodia de su hermano y tutor el Sr. Luis Cruz Rosario.[4] Además, se expidió una *Orden de Protección Ex Parte* en contra del Sr. Cruz Rosario y a favor de Sra. Ramos González, la cual estuvo vigente hasta el 17 de abril de 2023.[5]

El 17 de mayo de 2023, se celebró la *Vista Preliminar*, luego de haber sido pospuesta en una ocasión.[6] Al inicio de la vista, el representante legal del Sr. Cruz Rosario indicó que su representado estaba mentalmente incapacitado y solicitó que se determinará su procesabilidad conforme al procedimiento establecido en la Regla 240 de Procedimiento Criminal, *supra*.

---

[2] Anejo I de la *Petición de Certiorari*.
[3] *Íd.*
[4] *Íd.*
[5] Anejo III de la *Petición de Certiorari*.
[6] Anejos V y VI de la *Petición de Certiorari*.

Evaluada la solicitud de la defensa del Sr. Cruz Rosario, el TPI emitió y notificó un *Acta Sobre Regla 240 de Procedimiento Criminal*, mediante la cual, en lo pertinente, dispuso lo siguiente:

"[L]uego de oír la prueba de las partes, tomando en consideración lo solicitado por el/la abogado/a de la defensa en corte abierta, sin objeción del Ministerio Público; resuelve que tiene base razonable para creer que el/la imputado/a está mentalmente incapacitado y ordena que el expediente sea trasladado al Salón de Sesiones 401 para que continúen los trámites de conformidad a lo dispuesto en la Regla 240, supra.

Véase Resolución de hoy refiriendo a la parte imputada a evaluación."[7]

El 28 de junio de 2023, se celebró la primera *Vista de Procesabilidad* en el Caso Núm. **ISCI202300163** sobre Regla 240 de Procedimiento Criminal, *supra*, a la cual compareció el Sr. Cruz Rosario representado por la Lcda. Athelyn Jiménez Emmanuelli de la Sociedad para Asistencia Legal; el Ministerio Público representado por la Fiscal Wandie Camacho Santiago; la Sra. Ramos González; y la Dra. Yamilka M. Rolón García (en adelante, Dra. Rolón García), psiquiatra forense.[8]

Durante la vista, la Dra. Rolón García declaró que había examinado el estado mental del Sr. Cruz Rosario, informó sobre los resultados que obtuvo, e hizo una recomendación al tribunal.[9] El TPI le otorgó credibilidad a la opinión de la Dra. Rolón García, acogió

---

[7] *Íd.*

[8]  Anejo VIII de la *Petición de Certiorari*.

[9] *Íd.* Según surge de esta *Resolución y Orden*, durante la vista, la Dra. Rolón García expresó lo siguiente:

"[E]valuó al imputado mediante video conferencia desde el tribunal. Indicó, que[,] durante la evaluación realizada, obtuvo poca información de éste debido a que no estaba acompañado. Observó en el imputado retardación psicomotora, problemas del habla, problemas de atención, concentración[,] memoria y aparentes problemas cognitivos. En relación con el proceso legal, no pudo hablar coherentemente sobre lo que se le acusaba, cargos y posibles consecuencias. Su opinión es que no se encuentra procesable. Recomienda que el imputado tome tratamiento psicológico y psiquiátrico, y que someta al tribunal evidencia de servicios con el diagnóstico de tratamiento recomendado. Señaló la necesidad de descartar la existencia de un historial de discapacidad intelectual y un desorden cognitivo mayor." Recomienda[,] además, que el imputado acuda acompañado a futuras evaluaciones."

su recomendación y, finalmente, emitió una *Resolución y Orden* en corte abierta, la cual fue reducida a escrito el 6 de julio de 2023 y notificada el 7 de julio de 2023.[10] Mediante este dictamen, el TPI declaró No Procesable al Sr. Cruz Rosario y señaló una evaluación para el 17 de octubre de 2023 y una segunda vista de procesabilidad para el 25 de octubre de 2023.[11] El TPI ordenó a la defensa del Sr. Cruz Rosario a remitir por correo electrónico a la Dra. Rolón García copia del historial de salud mental del Sr. Cruz Rosario.[12] Además, ordenó al Departamento de la Familia, al Departamento de Salud-Programa de Discapacidad Intelectual, y a la Administración de Servicios de Salud Mental y Contra la Adicción a evaluar al Sr. Cruz Rosario e identificar los servicios que pudieran ofrecerle.[13]

Según surge del expediente, el 2 de agosto de 2023, el Departamento de Salud presentó una *Moción Informativa y en Solicitud de Orden*, en la cual, en atención a lo ordenado por el TPI, informó que el Programa de Discapacidad Intelectual había pautado una evaluación del Sr. Cruz Rosario para el 3 de octubre de 2023 en el antiguo Hospital Ruíz Soler en Bayamón.[14] Dicha agencia proveyó el nombre y el teléfono de la persona contacto para este proceso y, finalmente, solicitó que se ordenara al hospital o institución donde

---

[10] *Íd.*

[11] *Íd.* Según surge de esta *Resolución y Orden*, durante la vista, la Dra. Rolón García expresó lo siguiente:

> "[E]valuó al imputado mediante video conferencia desde el tribunal. Indicó, que[,] durante la evaluación realizada, obtuvo poca información de éste debido a que no estaba acompañado. Observó en el imputado retardación psicomotora, problemas del habla, problemas de atención, concentración[,] memoria y aparentes problemas cognitivos. En relación con el proceso legal, no pudo hablar coherentemente sobre lo que se le acusaba, cargos y posibles consecuencias. Su opinión es que no se encuentra procesable. Recomienda que el imputado tome tratamiento psicológico y psiquiátrico, y que someta al tribunal evidencia de servicios con el diagnóstico de tratamiento recomendado. Señaló la necesidad de descartar la existencia de un historial de discapacidad intelectual y un desorden cognitivo mayor." Recomienda[,] además, que el imputado acuda acompañado a futuras evaluaciones.

[12] *Íd.*

[13] *Íd.*

[14] Anejo X de la *Petición de Certiorari*.

el paciente se encontrara recluido a transportarlo el día de la evaluación.

Por su parte, el 9 de agosto de 2023, la Administración de Servicios de Salud Mental y Contra la Adicción presentó una *Moción Informativa* indicando, en síntesis, que, habían intentado contactar sin éxito al recurso de apoyo del Sr. Cruz Rosario para coordinar una orientación y su evaluación, en atención a lo ordenado por el TPI en su resolución.[15] Solicitaron que se proveyera cualquier otra información disponible para contactarlos y así cumplir con lo ordenado.

El 9 de agosto de 2023, notificada el 10 de agosto de 2023, el TPI emitió una *Orden*, mediante la cual, entre otros asuntos, le ordenó al Departamento de la Familia a proveer la transportación del Sr. Cruz Rosario el 3 de octubre de 2023 hacía las facilidades del Programa de Discapacidad Intelectual.[16] En esa misma fecha, el TPI emitió y notificó otra *Orden*, mediante la cual le ordenó a la defensa del Sr. Cruz Rosario a proveer la información solicitada por la Administración de Servicios de Salud Mental y Contra la Adicción en su moción.[17]

En cumplimiento con lo ordenado, el 24 de agosto de 2023, la defensa del Sr. Cruz Rosario presentó una *Moción en Cumplimiento de Orden*, en la cual informó la dirección postal y residencial y el teléfono del Sr. Luis Cruz Rosario; e indicó que esta era la única información que el Sr. Cruz Rosario les había provisto.

El 13 de octubre de 2023, el Departamento de Salud presentó una *Moción Informativa*, en la que indicó que el Sr. Cruz Rosario no había asistido a la evaluación pautada para el 3 de octubre de 2023 en el Hospital Ruíz Soler en Bayamón; y que la persona contacto del

---

[15] Anejo VIII de la *Petición de Certiorari*.
[16] Anejo XIII de la *Petición de Certiorari*.
[17] Anejo XIV de la *Petición de Certiorari*.

proceso había llevado a cabo gestiones sin éxito para contactar al hermano del Sr. Cruz Rosario.[18]

El 25 de octubre de 2023, el Departamento de Salud presentó una *Moción Informativa y en Solicitud de Orden*, en la que informó que se había pautado una nueva fecha para la evaluación del Sr. Cruz Rosario. Solicitaron nuevamente que se ordenara al hospital o institución donde se encontrara recluido el Sr. Cruz Rosario a que lo transportaran ese día a las facilidades del Programa de Discapacidad Intelectual en el Hospital Dr. Ruíz Soler en Bayamón.

En esa misma fecha, se celebró la segunda *Vista de Procesabilidad*, a la cual compareció, entre otras partes, el Sr. Cruz Rosario representado por la Lcda. Athelyn Jiménez Emmanuelli; el Ministerio Público representado por la Fiscal Wandie Camacho Santiago; la Sra. Ramos González; y la Dra. Rolón García.[19] En síntesis, la Dra. Rolón García declaró durante la vista que había examinado nuevamente el estado mental del Sr. Cruz Rosario, informó sobre los resultados que obtuvo, y dio su opinión pericial al sobre el particular.[20]

Finalizada la vista, el TPI emitió la *Resolución y Orden* recurrida en el Caso Núm. **ISCI202300163**, la cual fue notificada el

---

[18] Anejo XVIII de la *Petición de Certiorari.*
[19] Anejo XXII de la *Petición de Certiorari.*
[20] *Íd.* Según surge de esta *Resolución y Orden*, durante la vista, la Dra. Rolón García expresó lo siguiente:

> "La Dra. Yamilla Rolón informó bajo juramento que, evaluó al acusado, quien compareció acompañado a la evaluación desde el tribunal. Indicó que, durante la evaluación realizada, fue muy poca la información que pudo obtener, pero obtuvo un poco más que la vez anterior. Señaló que, el acusado se mostró poco cooperador, presentó retardación psicomotora, problemas de atención, concentración y memoria. Este reportó que no está recibiendo tratamiento de salud mental. En relación con el proceso legal, no pudo hablar coherentemente sobre lo que se le acusaba, cargos y posibles consecuencias. Mencionó que el acusado fue evaluado por el Departamento de la Familia y la trabajadora social lo está asistiendo para que obtenga una cita con un psicólogo y con un psiquiatra. Indicó que, en la vista anterior se emitió una orden a ASSMCA y no ha recibido ninguna Información en cuanto a esta orden. Explicó que, ya hay una orden del tribunal para que el acusado sea evaluado y no es si [é]l quiere. De no cumplirse con lo ordenado, entiende que procedería que el acusado ingrese a un Tratamiento Interno o a Psiquiatría Forense para que reciba el tratamiento que amerita."

26 de octubre de 2023.[21] Mediante este dictamen, el TPI acogió la recomendación de la Dra. Rolón García y, en consecuencia, declaró nuevamente No Procesable al Sr. Cruz Rosario y ordenó su ingreso inmediato al Hospital Psiquiátrico Forense de Ponce "para que reciba tratamiento de salud mental y educación con el proceso legal".[22] Además, se señaló una evaluación para el 20 de febrero de 2024 y una vista de seguimiento para el 28 de febrero de 2024.[23]

Así las cosas, el 3 de noviembre de 2023, el Sr. Cruz Rosario presentó una *Petición de Habeas Corpus* ante el TPI bajo el Caso Núm. **ISCI202300289** solicitando que se ordenara el alta del Sr. Cruz Rosario del Hospital Psiquiátrico Forense de Ponce.[24] En síntesis, alegó que no se reunían los criterios clínicos ni severidad para estar recluido en dicha institución, por lo que la reclusión se había ordenado en contravención a lo establecido en la Ley Núm. 408-2000, según enmendada, conocida como *"Ley de Salud Mental de Puerto Rico"*, 24 LPRA sec. 6152 *et seq.*

El 6 de noviembre de 2023, notificada el 7 de noviembre de 2023, el TPI emitió la *Resolución* recurrida en el Caso Núm. **ISCI202300289**, mediante la cual declaró No Ha Lugar la *Petición de Habeas Corpus* presentada por el Sr. Cruz Rosario.[25]

Inconforme con las determinaciones anteriores, el Sr. Cruz Rosario acudió ante nos el 27 de noviembre de 2023 mediante el presente recurso de *Petición de Certiorari*, en el que señala los errores siguientes:

> **Primer error:** El TPI abusó de su discreción al ordenar el ingreso del señor Cruz Rosario -quien padece de discapacidad intelectual -en el Hospital de Psiquiatría Forense de Ponce. Ello para que recibiera "tratamiento" interno sin que se estableciera mediante prueba la

---

[21] *Íd.*
[22] *Íd.* Surge de esta *Resolución y Orden*, que la Defensa solicitó en corte abierta la reconsideración de esta determinación, lo cual fue declarado No Ha Lugar por el TPI.
[23] *Íd.*
[24] Anejo XXIV de la *Petición de Certiorari.*
[25] Anejo XXVII de la *Petición de Certiorari.*

necesidad de tal nivel de restricción, en lugar de identificar las necesidades particulares, generar los apoyos y ajustes necesarios para viabilizar el cumplimiento con las órdenes del tribunal, en igualdad de condiciones que los demás ciudadanos, según ordena el debido proceso de ley y la igual protección de las leyes.

**Segundo error:** El TPI violentó el derecho del señor Cruz Rosario a la igual protección de las leyes, al mantenerlo recluido en un hospital de psiquiatría forense sin que se descargara la prueba necesaria de trastorno mental severo y peligrosidad, como hubiera ocurrido de habérsele aplicado los estándares que, de ordinario, aplican a los ciudadanos que son recluidos involuntariamente en virtud de la Ley de salud mental de Puerto Rico.

**Tercer error:** El TPI violó el derecho del señor Cruz Rosario a un debido proceso de ley, al ordenar su reclusión en un hospital de psiquiatría forense sin que existieran criterios clínicos que justificaran el nivel de cuidado más restrictivo. Esto, en contravención a la prohibición de hospitalización o tratamiento sin criterios clínicos y la prohibición de institucionalización que establece la Ley de Salud Mental, el *Código Penal, Olmstead v. L. C.*, 527 U.S. 581 (1999), la Ley ADA y el DD Act.

**Cuarto error:** Erró el TPI al denegar la solicitud de *hábeas corpus* por entender que no era el mecanismo apropiado sino una moción de reconsideración. Ello, toda vez que el hábeas corpus existe, precisamente, para solicitar el auxilio del Tribunal ante una restricción de la libertad, en violación a los derechos civiles y constitucionales, bajo leyes estatales y federales, oponibles frente a instituciones de psiquiatría forense.

El 6 de diciembre de 2023, el Ministerio Público, representado por la Oficina del Procurador General, presentó un *Escrito en Cumplimiento de Orden.*

Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A.

El recurso de *certiorari* es "un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las

determinaciones de un foro inferior." *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Véase, además, *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). En el ámbito judicial, el concepto discreción "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho." *IG Builders et al. v. BBVAPR*, supra, pág. 338. La discreción, "es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Torres González v. Zaragoza Meléndez*, 2023 TSPR 46, 211 DPR ___ (2023); *800 Ponce de León v. AIG*, supra, a la pág. 174.

En el caso particular del Tribunal de Apelaciones, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita los asuntos interlocutorios que podemos revisar mediante un recurso de *certiorari*, bajo el entendimiento de que estos pueden esperar hasta la conclusión del caso para ser revisados en apelación. *IG Builders et al. v. BBVAPR*, supra, pág. 337. Al respecto, la Regla 52.1 de Procedimiento Civil, *supra*, dispone específicamente que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 56 y 57, o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la

apelación constituiría un fracaso irremediable de la justicia. *Íd.* Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

A su vez, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que el Tribunal de Apelaciones deberá tomar en consideración al determinar si procede la expedición de un recurso de *certiorari* o de una orden de mostrar causa. Estos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia." Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.*

**B.**

La Regla 239 de Procedimiento Criminal, 34 LPRA Ap. II, R. 239, dispone que "[n]inguna persona será juzgada, convicta o sentenciada por un delito mientras esté mentalmente incapacitada." La capacidad o incapacidad mental de una persona de encarar un proceso judicial en su contra se conoce como "procesabilidad del imputado". *Pueblo v. Pagán Medina,* 178 DPR 228 (2012). Dicho concepto se refiere a la lucidez con la que un imputado de delito puede entender la naturaleza y el procedimiento criminal al que se

enfrenta. *Íd.*; *Pueblo v. Méndez Pérez*, 193 DPR 781, 801 (2015); *Ruiz v. Alcaide*, 155 DPR 492, 499 (2001).

La prohibición que establece la Regla 239 de Procedimiento Criminal, *supra*, tiene como propósito impedir que se someta a juicio a una persona que es incapaz de comprender la naturaleza y propósito de los procedimientos que se siguen en su contra, y como consecuencia, de defenderse adecuadamente. *Pueblo v. Pagán Medina*, supra; *Pueblo v. Santiago Torres*, 154 DPR 291 (2001). Tal prohibición se fundamenta en la normativa jurídica medular que establece que encausar a una persona no procesable viola el derecho constitucional a un debido proceso de ley. *Íd.*

Es en virtud de dicho precepto que la subsiguiente Regla 240 de Procedimiento Criminal, *supra*, dispone que:

> "[e]n cualquier momento después de presentada la acusación o denuncia y antes de dictarse la sentencia, **si el tribunal tuviere evidencia, además de la opinión del representante legal del imputado o acusado, que estableciere mediante preponderancia de la prueba que el acusado está mentalmente incapacitado, o que éste no es capaz de comprender el proceso y colaborar con su defensa como consecuencia de alguna condición que afecta sus destrezas de comunicación, expondrá detalladamente por escrito los fundamentos para dicha determinación, suspenderá los procedimientos y señalará una vista para determinar el estado mental y/o funcional del acusado."** (énfasis suplido).

La Regla 240 de Procedimiento Criminal, *supra*, establece además el siguiente proceso:

> "(a) [...] Una vez se señale esta vista, deberá el tribunal designar uno o varios peritos para que examinen al acusado y declaren sobre su estado mental y/o funcional. Se practicará en la vista cualquier otra prueba pertinente que ofrezcan las partes. En estos casos, la representación legal del imputado o acusado deberá presentar al tribunal una moción informando la intención de solicitar la paralización de los procedimientos por razón de la incapacidad mental y/o funcional de su representado acompañada de evidencia pericial de tal incapacidad, dentro de un término no menor de tres (3) días antes de la fecha señalada para la vista de que se trate.
>
> (b) Efectos de la determinación. Si como resultado de la prueba el tribunal determinare que el acusado está

mentalmente y/o funcionalmente capacitado, continuará el proceso. **Si el tribunal determinare lo contrario, podrá ordenar la reclusión del acusado en una institución adecuada. En aquellos casos en que el tribunal hallare que el imputado o acusado padece de alguna condición que no le permite comprender el proceso y colaborar con su defensa podrá ordenar, de entenderlo necesario, que éste sea ingresado en un centro de adiestramiento para el desarrollo de destrezas de vida independiente.** Si luego de así recluirse al acusado el tribunal tuviere base razonable para creer que el estado mental y/o funcional del acusado permite la continuación del proceso, citará a una nueva vista que se llevará a cabo de acuerdo con lo provisto en el apartado (a) de esta Regla, y determinará entonces si debe continuar el proceso.

(c) Fiadores; depósito. Si el tribunal ordenare la reclusión del acusado en una institución, según lo dispuesto en el inciso (b) de esta Regla, quedarán exonerados sus fiadores, y de haberse verificado un depósito de acuerdo con la Regla 222, será devuelto a la persona que acreditare su autoridad para recibirlo.

**(d) Procedimiento en la vista preliminar.** Si el magistrado ante quien hubiere de celebrarse una vista preliminar tuviere evidencia, además de la opinión del representante legal del imputado, que estableciere mediante preponderancia de la prueba que el imputado está mentalmente incapacitado, o que éste no es capaz de comprender el proceso y colaborar con su defensa como consecuencia de alguna condición que afecta sus destrezas de comunicación, expondrá detalladamente por escrito los fundamentos para dicha determinación, suspenderá dicha vista y levantará un acta breve al efecto, de la cual dará traslado inmediato, con los demás documentos en autos, al secretario de la sala del Tribunal de Primera Instancia correspondiente, ante la cual se celebrará una vista siguiendo lo dispuesto en el inciso (a) de esta Regla. En estos casos, la representación legal del imputado deberá presentar al tribunal una moción informando la intención de solicitar la paralización de los procedimientos por razón de la incapacidad mental y/o funcional de su representado acompañada de evidencia pericial de tal incapacidad, dentro de un término no menor de tres (3) días antes de la fecha señalada para la vista preliminar. Si el tribunal determinare que el imputado está mentalmente y/o funcionalmente capacitado, devolverá el expediente al magistrado o tribunal de origen, con su resolución, y los trámites de la vista preliminar continuarán hasta su terminación. **Si el tribunal determinare lo contrario, actuará de conformidad con lo provisto en el inciso (b) de esta Regla, solo que a los efectos de la vista preliminar."** (énfasis suplido).

**C.**

Tanto la Constitución de Estados Unidos, como la de Puerto Rico, garantizan que a ninguna persona se le privará de su libertad o propiedad sin el debido proceso de ley. Enmiendas V y XIV de la Const. de Estados Unidos, Art. II, Sec. 7 de la Const. de Puerto Rico.

Por otra parte, la Exposición de Motivos de la Ley Núm. 408-2000 expresa que "velar por la salud mental de nuestro Pueblo, es y debe ser un asunto de entero interés para el Gobierno de Puerto Rico. La salud mental es elemento matriz de la sana convivencia y de una buena calidad de vida."

En relación con una determinación de **no procesabilidad permanente de un individuo,** el Tribunal Supremo de los Estados Unidos expresó en *Jackson v. Indiana*, 406 US 715, 738 (1972), lo siguiente:

> We hold, consequently, that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then **the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen or release the defendant.** (Énfasis nuestro).

Nuestro Tribunal Supremo adoptó el antedicho precepto legal y manifestó en *Pueblo v. Santiago Torres*, supra, que: **"[f]rente a una determinación de no procesabilidad permanente de un individuo, el Estado tiene dos (2) opciones, a saber: dejarlo en la libre comunidad o iniciar los procedimientos de internación civil."**

> "A tales fines, al plantearse, de un lado, la posibilidad de la liberación, y, de otro lado, la restricción a la libertad, hay varios intereses en juego. El Estado tiene, bajo el poder de *parens patriae,* un interés legítimo en cobijar y proveerle al individuo aquel cuidado que por razón de su condición no puede brindárselo él mismo, incluyendo un tratamiento que mejore su condición, bajo su poder regulador (*police power*), un interés de proteger a la ciudadanía en general ante el posible peligro que representa el individuo, y, por último, bajo ambos poderes, un interés de prevenir que el individuo

se haga daño a sí mismo. El imputado, de otra parte, posee un interés fundamental de que no se restrinja su libertad sin el debido proceso de ley.[26]

[…]

Es decir, **en el supuesto de no procesabilidad permanente**, el tribunal, tras considerar el grado de peligrosidad del individuo —tanto para sí como para la sociedad— como consecuencia de su condición mental, archivará los cargos en su contra y lo pondrá en libertad o dispondrá que se inicien los procedimientos conforme a la Ley de Salud Mental."

**III**

En síntesis, en los primeros tres (3) errores señalados en su recurso de *Petición de Certiorari*, el Sr. Cruz Rosario alega que el TPI erró al ordenar su reclusión en el Hospital Psiquiátrico Forense de Ponce.

En este caso, según reseñamos, la perito Dra. Rolón García, quien fue designada por el TPI, declaró que examinó en dos (2) ocasiones el estado mental del Sr. Cruz Rosario y, a base de los resultados, opinó que este no estaba mentalmente capacitado para comprender el proceso judicial seguido en su contra y colaborar con su defensa. El TPI le otorgó credibilidad a la opinión de la Dra. Rolón García y acogió su recomendación. Finalmente, mediante la *Resolución y Orden* emitida el 25 de octubre de 2023 en el Caso Núm. **ISCI202300163**, el TPI a base de prueba que tuvo ante su consideración declaró que el Sr. Cruz Rosario no era procesable, ordenó su reclusión en el Hospital Psiquiátrico Forense de Ponce, y señaló una vista de seguimiento. Según dispuso el TPI en su dictamen, la orden de reclusión del Sr. Cruz Rosario en dicha institución tenía como propósito que este recibiera tratamiento de salud mental y educación sobre el proceso legal.

---

[26]Citando a *Heller v. Doe*, 509 US 312, 332 (1993); *Addington v. Texas*, 441 US 418, 426 (1979); *Seling v. Young*, 121 S.Ct. 727, 734 (2001); *Kansas v. Hendricks*, 521 US 346, 363 (1997) y D.H.J. Hermann, *Barriers to Providing Effective Treatment: A Critique of Revisions in Procedural, Substantive, and Dispositional Criteria in Involuntary Civil Commitment*, 39 Vand. L. Rev. 83, 95 (1986).

Evaluado el presente recurso de *certiorari* a la luz de lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*, y la Regla 40 del Reglamento de Tribunal de Apelaciones, *supra*, determinamos que no procede su expedición. Conforme provee la Regla 240 de Procedimiento Criminal, *supra*, de entenderlo necesario, el TPI podía ordenar a que el Sr. Cruz Rosario fuera recluido en una institución apropiada hasta que su estado mental permitiera la continuación del proceso judicial seguido en su contra. Además, del expediente surgen los trámites seguidos por dicho foro previo a ordenar la reclusión del Sr. Cruz Rosario en un intento por cumplir con el proceso establecido en la Regla 240 de Procedimiento Criminal, *supra*. En el caso de autos esto ni siquiera fue posible ante el incumplimiento de la parte imputada y su tutor con asistir a la evaluación pautada en el Programa de Discapacidad Intelectual en las facilidades el antiguo Hospital Ruíz Soler en Bayamón y las gestiones realizadas para contactarlos habían sido infructuosas. Es importante puntualizar que estando el imputado bajo la custodia del Estado las agencias concernidas se aseguren de cumplir con las órdenes del Tribunal para que en la próxima vista la Psiquiatra del Estado y el foro primario puedan evaluar de existir alternativas menos restrictivas. Además, la abogada de defensa y el tutor del imputado deberán cumplir con cualquier documento solicitado o que le soliciten las agencias concernidas.

Además, se aclara que la etapa procesal del caso en la cual se encuentra es una de no procesabilidad y el imputado no ha sido declarado todavía no procesable permanentemente para que se activen las disposiciones de la Ley Núm. 408-2000, *supra*. Véase, *Jackson v. Indiana*, supra; *Pueblo v. Santiago Torres*, supra. Por tanto, no se justifica nuestra intervención en esta etapa de los procedimientos.

Finalmente, en el cuarto señalamiento de error del recurso de *Petición de Certiorari*, el Sr. Cruz Rosario alega que el TPI erró al denegar su petición de *habeas corpus* mediante la *Resolución* emitida el 6 de noviembre de 2023 y notificada el 7 de noviembre de 2023 por el TPI en el Caso Núm. **ISCI202300289** por entender que no era el remedio adecuado.

Luego de evaluar el trámite procesal de este caso, determinamos que no tenemos jurisdicción para revisar la *Resolución* emitida en el Caso Núm. **ISCI202300289** mediante el presente recurso de *certiorari*. La normativa procesal vigente impide a una parte agrupar determinaciones de **varios casos** en un mismo recurso. Véase, *Silva Barreto v. Tejada Martell*, 199 DPR 311 (2017); M-*Care Compounding et al. v. Depto. Salud*, 186 DPR 159, 176 (2012). La parte peticionaria debió presentar recursos por separados. *Íd.*

El incumplimiento con los requisitos reglamentarios sobre la presentación de los recursos nos priva de jurisdicción para atender este cuarto señalamiento de error. En múltiples ocasiones, el Tribunal Supremo ha señalado que los tribunales debemos ser celosos guardianes de nuestra jurisdicción. *Lozada Sánchez* et al. *v. JCA*, 184 DPR 898, 994 (2012). Para cumplir con dicha jurisdicción los recursos apelativos deben quedar adecuadamente perfeccionados para poder ser atendidos,[27] de lo contrario podrían ser desestimados. *Soto Pino v. Uno Radio Group*, 189 DPR 84 (2013).

**IV**

Por los fundamentos expuestos, se deniega la expedición del auto de *certiorari*.

---

[27] *M-Care Compounding* et al. *v. Depto. Salud*, 186 DPR 159, 176 (2012); *Hernández Maldonado v. Taco Maker*, 181 DPR 281, 290 (2011); *Pueblo v. Rivera Toro*, 173 DPR 137 (2008).

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones